# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN GALLAGHER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Civil Action No. 06-S-770-S** |
| BLUE CROSS BLUE SHIELD OF | ) | |
| ALABAMA, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER
## ADDRESSING MOTIONS *IN LIMINE*

This action, filed under the Family and Medical Leave Act of 1993 ("FMLA"),

Pub. L. No. 103-3, 107 Stat. 1022 (codified at 29 U.S.C. § 2601 *et seq.*), is before the

court on three motions *in limine*.[1]

"A motion *in limine* seeks a protective order prohibiting the opposing party,

counsel, and witnesses from offering offending evidence at trial, or even mentioning

it at trial, without first having its admissibility determined outside the presence of the

jury." *Mee Industries v. Dow Chemical Co.*, No. 6:05-CV-1520-Orl-31DAB, 2008

WL 874836, at *1 (M.D. Fla. Mar. 27, 2008). "A motion *in limine* to exclude

---

[1] Doc. no. 43 (Plaintiff's Motion *in Limine* Regarding Plaintiff's Prior Attendance and Medical History); doc. no. 44 (Defendant's Motion *in Limine* Precluding Testimony Regarding Any alleged Emotion Distress Suffered by Plaintiff); doc. no. 50 (Defendant's Motion *in Limine* to Exclude Certain Testimony by Dr. William Summers).

evidence may be granted only if the evidence sought to be excluded is clearly

inadmissible for *any purpose.*"  *Plair v. E.J. Brach & Sons*, *Inc.*, 864 F. Supp. 67, 69

(N.D. Ill. 1994) (emphasis supplied). *Accord Stewart v. Hooters of America*, *Inc.*, No.

8:04-CV-40-T-17-MAP, 2007 WL 1752838, at *1 (M.D. Fla. June 18, 2007) ("[I]f

evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial

to allow questions of foundation, relevancy, and prejudice to be resolved in

context."); *Bowden v. Wal-Mart Stores*, *Inc.*, No. Civ. A. 99-D-880-E, 2001 WL

617521, at *1 (M.D. Ala. Feb. 20, 2001) (same).  The moving party bears the burden

of demonstrating that the evidence is clearly inadmissible.  *Id.*

## I.  PLAINTIFF'S MOTION *IN LIMINE*

Only one claim from plaintiff's complaint remains pending in this case, and it

is based on 29 U.S.C. § 2615(a)(1) — a provision that makes it unlawful for an

employer "to interfere with, restrain, or deny the exercise of or the attempt to

exercise, any right provided [by the FMLA]."  *Id*.  *See also*, *e.g.*, *Strickland v. Water*

*Works & Sewer Board of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir.

2001); *Peter v. Lincoln Technical Institute*, *Inc.*, 255 F. Supp. 2d 417, 438 (E.D. Pa.

2002).

Plaintiff's interference claim focuses on defendant's treatment of her during

and subsequent to her extended absence from work between March 6 and April 4,

2006.  Plaintiff requested that this absence be counted as protected FMLA leave, but

defendant refused that request (and ultimately terminated plaintiff) after plaintiff's

physician, Dr. William Summers, failed to submit the required medical certification

paperwork within the 16-day period allotted by defendant for doing so.  It just so

happens that plaintiff was disciplined for using excessive sick leave on at least one

previous occasion, approximately a year earlier.[2]  Recognizing this, plaintiff asks the

court to exclude pursuant to Federal Rules of Evidence 403 and 404 any arguments,

testimony, or other evidence relating to her medical and/or job attendance history

prior to her absence from work beginning on March 6, 2006.  According to plaintiff,

> [e]vidence relating to [her] past absences and/or health condition would
> tend to confuse the jury by asking [the jurors] to focus on absences not
> at issue in this case and could prejudice the jury against [her] by
> implying that past attendance issues could negate an inference that she
> had a legitimate entitlement to FMLA leave for the March and April
> absences at issue in this case.[3]

Responding to plaintiff's request to exclude prior absences, defendant argues

that its "patient application of the [attendance] policy in earlier episodes is evidence

of good faith,"[4] and says it needs this evidence to rebut plaintiff's charge that it acted

in bad faith in refusing to permit an exception to its 16-day time limitation for receipt

---

[2] *See* doc. no. 31 (Final Pretrial Order), at 6.

[3] Doc. no. 43, at 5.

[4] Doc. no. 54, at 4.

of medical certification documents.

Both sides cite an unpublished decision of the United States District Court for the Southern District of Illinois as supportive of their respective positions. *See Baumgarden v. Challenge Unlimited, Inc.*, No. 04-CV-568-WDS, 2006 WL 334253, (S.D. Ill. Jan. 11, 2006). The court finds that case inapposite. In *Baumgarden*, the plaintiff sought to exclude "evidence of any absence or request for leave taken . . . for time off work except for time relating to [his] FMLA leave." *Baumgarden*, 2006 WL 334253, at *3. As in this case, the defendant responded that it should be permitted to establish "that plaintiff received time off when he requested it, and that this is relevant to show the pattern of considerate treatment he received from defendant." *Id*. But it seems that the issue in *Baumgarden* was not whether the defendant should have granted the plaintiff FMLA leave, but whether it acted appropriately in altering the plaintiff's duties when he returned to work after taking such leave. *See id*. at **2-3. The defendant alleged that it took the plaintiff's previous grievances and leave requests into consideration *when formulating a refined job description. Id*. at *3. Accordingly, the defendant argued that the previous absences were "relevant to the defendant's state of mind in its treatment of plaintiff upon his return to work." *Id*. After reviewing this argument, the court struck a middle ground, allowing the defendant to introduce the plaintiff's prior absences and leave requests if, and only

if, the plaintiff argued that the defendant "treated him poorly."  *Id*. at \*4.

Here, of course, there is no issue regarding defendant's treatment of plaintiff upon her return to work, because plaintiff was terminated before she could return. Accordingly, there is no need to show (and no sense in attempting to show) that defendant had plaintiff's best interests in mind.  What defendant is *really* attempting to do is bring out allegations that plaintiff previously violated — and was disciplined for violating — its attendance policy.  Because the court cannot fathom how previously *disciplining* plaintiff for accruing too many sick hours could possibly demonstrate "patient" application of its sick leave policy, such evidence is not literally relevant to the determination of any fact in issue here.[5]  *See* Fed. R. Evid. 401.  Indeed, the only possible relevance such evidence has is as support for the inference that plaintiff is predisposed to abuse sick leave.  In other words, defendant desires to portray plaintiff as a chronic abuser of sick leave for the sole purpose of suggesting that she abused her leave during the incident in question.  But "[e]vidence of other . . . wrongs, or acts *is inadmissible* to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b) (emphasis supplied). Accordingly, this aspect of plaintiff's motion is GRANTED.

---

[5] Likewise, the fact that defendant previously disciplined plaintiff for not complying with its policy regarding non-protected leave says nothing about how defendant treated her request for protected leave on this occasion.

The other prong of plaintiff's motion requests exclusion of evidence of her medical history that is not related to her absences during March and April, 2006. Plaintiff argues that this information simply is not relevant because the sole issue in this case is whether she was entitled to FMLA leave during that limited period of time.  *See* Fed. R. Evid. 401.

Defendant counters that, "[t]o the extent that Dr. Summers relied on any of Plaintiff's medical history in forming his diagnosis of Plaintiff in March 2006, such evidence is relevant for rebuttal testimony, cross examination and impeachment,"[6] because the existence of a "serious health condition" is in dispute.  Defendant cites *Schober v. SMC Pneumatics*, *Inc.*, No. IP-99-1285-C-T/G, 2000 WL 1911684, at *3 (S.D. Ind. Dec. 4, 2000), as support for its contention, but this case is only marginally helpful.  The court there actually ruled that evidence of medical history prior to the time in question was at least facially *irrelevant*, and tentatively excluded it.  *See id*. Defendant seeks to hang its hat on the court's boilerplate caveat that it *might* reconsider its ruling in the event that other evidence offered at trial tended to establish the relevance of the medical history information.  *See id*.  This court doubts that any evidence at trial will render medical history prior to March 2006 relevant, especially given that the determination of whether plaintiff suffered from a "serious health

---

[6] Doc. no. 54, at 4.

condition" is generally a function of the nature of the treatment prescribed for the condition immediately at issue, and not the symptoms or history of the condition. *See generally* 29 C.F.R. § 825.114(a); *Hemenway v. Albion Public Schools*, No. 4:05-CV-7, 2006 WL 3313849, at *5 (W.D. Mich. Nov. 15, 2006). In other words, the accuracy of Dr. Summers's diagnosis may not be the major issue; it may be sufficient simply to introduce evidence of a treatment regime that satisfies the definition of "serious health condition" contemplated by Department of Labor regulations. *See* 29 C.F.R. § 825.114(a).

Nevertheless, this court will follow the *Schober* court's lead and make only a tentative ruling on this issue. This aspect of plaintiff's motion *in limine* is GRANTED, but the court may revisit this issue if defendant can show, *outside the presence of the jury*,[7] that plaintiff's medical history prior to March 2006 is somehow relevant to the determination of whether plaintiff suffered from a "serious health condition" during the period of time in question.

## II.  DEFENDANT'S MOTION *IN LIMINE* REGARDING DR. WILLIAM SUMMERS

Dr. William Summers is perhaps the most critical witness in this case, because it was he who allegedly failed to complete and deliver the supporting medical

---

[7] The proper procedure for requesting and obtaining such a ruling is for counsel to request a side-bar conference, at which arguments may be presented outside the hearing of the jury.

certification documentation necessary to process plaintiff's claim for protected leave within the time-frame allotted by defendant, even though plaintiff alleges that she repeatedly asked him to do so.  Since the issue in this case is whether defendant unreasonably interfered with plaintiff's right to have her absences counted as protected leave by refusing to accept Dr. Summers's certification, submitted three days after the deadline, plaintiff desires to have Dr. Summers corroborate her side of the story.  Defendant has not moved to preclude Dr. Summers from testifying, but seeks to *limit* his testimony in multiple respects.

Below, the court will rule upon each request for limitation, utilizing a numerical list corresponding to that appearing in defendant's motion.  The wording of the request (in boldface type) is copied *verbatim* from the underlying motion, followed by the court's ruling.

> **1.    Any testimony, comments, or arguments relating to the opinion of Summers concerning the "sufficiency" or "adequacy" of any conduct, effort, or actions taken by the Plaintiff to obtain the completed medical certification paperwork from Dr. Summers and/or his staff prior to the deadline.**

As stated above, plaintiff's FMLA claim is of the "interference" variety.  It is well-established that requiring medical certification in support of a request for FMLA leave does not rise to the level of interference with an employee's FMLA rights.  *See*

29 C.F.R. § 825.305(b).  Even so, the employee need not provide the certification within the employer's time-frame if "it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id*. *See also*, *e.g.*, *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 779 (7th Cir. 2000) (noting in *dictum* that the time allotted to an employee for provision of medical certification is subject to principles of equitable tolling); *Peter v. Lincoln Technical Institute, Inc.*, 255 F. Supp. 2d 417, 442 (E.D. Pa. 2002) (holding that the plaintiff "produced sufficient evidence of her good-faith efforts to provide the medical certification requested by [her employer] that a jury could reasonably find that it was impracticable under the circumstances to provide it in a timely manner").

Plaintiff argues that Dr. Summers's testimony regarding the facts surrounding the return of her medical certification is relevant to the jury's determination as to whether it was practicable under the particular circumstances for plaintiff to provide the certification within the time-frame allowed by defendant.  Defendant does not really dispute this point.  Rather, it argues that Dr. Summers should be precluded from stating that, in his professional medical opinion and considering plaintiff's medical condition, she "did all she could do" to coax him into providing the requested information.[8]  In essence, defendant desires to limit Dr. Summers's testimony to a

---

[8] Doc. no. 50, at 2.

recitation of factual information, and to prevent him from masquerading as some sort

of due diligence expert.  Defendant's point is well-taken, but this is a fine line.

As plaintiff notes, Federal Rule of Evidence 701 allows lay witnesses (and Dr.

Summers was never identified as an expert witness) to proffer opinion testimony so

long as the testimony is "rationally based on the perception of the witness, . . . helpful

to a clear understanding of the witness' testimony or the determination of a fact in

issue, and . . . not based on scientific, technical or other specialized knowledge within

the scope of Rule 702."  Fed. R. Evid. 701.  Dr. Summers's statement that plaintiff

"did all she could do" to persuade him to deliver the certification would arguably

clarify his testimony concerning her efforts, and the statement certainly would not be

based on scientific or otherwise specialized knowledge.  It is true that the proposed

opinion strikes at the very heart of this case, but "testimony in the form of an opinion

or inference otherwise admissible is not objectionable because it embraces an ultimate

issue to be decided by the trier of fact."  Fed. R. Evid. 704(a).  Moreover, although

defendant suggests that this opinion is based on information gleaned from discussions

with office workers, appropriate foundation could establish that Dr. Summers's

opinion as to plaintiff's diligence is rationally based upon his own perceptions.  *See*

*Thompson v. Equifax Credit Information Services*, *Inc.*, No. 00-D-1468-S, 2002 WL

34367325, at *1 (M.D. Ala. Mar. 6, 2002) ("Often, questions of foundation,

relevancy, and prejudice are better resolved in context at trial than in a motion *in limine*.") (internal quotations and citation omitted).

For the foregoing reasons, this aspect of defendant's motion is GRANTED in part and DENIED in part.  Assuming the proper foundation is laid, the court may permit plaintiff's counsel to inquire of Dr. Summers as to whether he believes that plaintiff did all she could to have him deliver the requisite certification in time. However, tight control will be retained over direct examination to ensure that all lay opinions are supported by a sufficient predicate, and Dr. Summers is specifically prohibited from attempting to lend credence to his assessments by attaching the qualifier "in my professional medical opinion," or the like.  This is not a matter for expert testimony and, as mentioned, Dr. Summers was not identified as an expert witness in this case.  The court also reserves the right to limit testimony on these matters to prevent prejudice, cumulativeness, and confusion.  *See* Fed. R. Evid. 401, 403.

As for defendant's request that plaintiff's counsel be prevented from *arguing* that plaintiff did "everything she could" (or similar phraseology) to timely obtain the requisite certification, the court refuses to hobble advocacy in this manner.  Counsel is reminded, however, that it is ultimately *the jury* that must decide whether plaintiff exercised sufficient diligence, and it is *the court* that instructs the jury on the law

governing that decision.  In other words, plaintiff's attorney may not flatly tell the

jury that plaintiff satisfied the legal standard, but she may make arguments to that

effect.

> **2.** **Any testimony, comments, or arguments relating to the opinion of Dr. Summers assessing the "fault" or "blame" of any party as to the timeliness of Gallagher's certification documents, or of any reliance upon the "assurances" of Dr. Summers or his staff.**

Defendant is also concerned that placing Dr. Summers before the jury as the

proverbial "fall guy" will hamper its defense.  Maybe so, but that theory is the very

essence of plaintiff's case, and the court will not totally prevent her from soliciting

testimony in support of such an inference.  On the other hand, the court agrees with

defendant that Dr. Summers is not so acquainted with defendant's policies and

procedures to competently testify that plaintiff's termination was his "fault," or that

he was "to blame" for defendant's decision to fire her.  Nor can Dr. Summers

accurately state whether or not plaintiff relied upon his "assurances," or those of his

staff (assuming, of course, that hearsay statements of staff may be made admissible

— a potentially problematic assumption).  Reliance is a matter that can and should

be covered during direct- and cross-examination of plaintiff.

Dr. Summers may, however, state that it was his "fault," or that he was "to

blame," for not submitting the medical certification form in a timely manner.

Assuming the facts turn out to be as plaintiff alleges, that would not be a statement

of opinion, but a candid acknowledgment that he was the responsible party, and that

he failed to carry out his responsibility to his patient.   Contrary to defendant's

arguments, this testimony would be "relevant," as that term is defined by the Federal

Rules of Evidence, because it would bolster plaintiff's claim that compliance with

defendant's time-line was out of her control. *See* Fed. R. Evid. 401 (defining relevant

evidence as "evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable than it would be

without the evidence").[9]

Accordingly, this aspect of defendant's motion is GRANTED in part and

DENIED in part, as outlined above.

> **3.      Any testimony, comments, or arguments relating to the medical treatment, symptoms, diagnoses, or conclusions related to Plaintiff's health condition at the time she was treated by Dr. Summers, that is not corroborated or reflected by Summers's treatment records.**

The heading accompanying this aspect of defendant's motion seeks universal

preclusion of any health information "that is not corroborated or reflected by [Dr.]

---

[9] Plaintiff's counsel does represent that she will not reference Dr. Summers's opinion as to plaintiff's efforts or assignment of blame during opening statements, and the court intends to hold her to her word on this point. *See* doc. no. 55, at 3.

Summers's treatment records."[10]   Defendant cites no authority in support of this breathtaking limitation on Dr. Summers's proposed testimony, and the court is not aware of any case or rule requiring that a witness' testimony be confined to matters that are independently verifiable by reference to existing written records.  Assuming the medical records are deemed admissible or otherwise useable, defendant certainly may attempt to *impeach* Dr. Summers's testimony, to the extent that it deviates from those records, but his testimony need not be inextricably tied to the written records.

The heading notwithstanding, it appears that the true focus of this aspect of the motion is limiting Dr. Summers's testimony "to the facts existing at the time he treated Plaintiff, upon which his medical certification documents were based."[11]  The court is more sympathetic to this limitation, which would, in effect, preclude Dr. Summers from testifying about plaintiff's current health status, or even about other health problems plaintiff experienced at the time in question that were unrelated to the health problems that allegedly led her to seek protected leave.  Such testimony would not be relevant to the determination of whether plaintiff requested leave on account of a "serious health condition," *see* Fed. R. Evid. 401, and is, therefore, prohibited.   Likewise, the attorneys for both sides are ordered to refrain from

---

[10] Doc. no. 50, at 3.

[11] Doc. no. 50, at 4.

discussing, arguing, or commenting about collateral health conditions.

In accordance with the foregoing, this aspect of defendant's motion is GRANTED in part and DENIED in part.

**4.     Any testimony, comments, or argument offering any medical opinions, diagnoses, or conclusions by Dr. Summers as an expert witness in any field of medicine.**

As previously discussed, plaintiff did not identify Dr. Summers as an expert witness.   Therefore, precluding him from offering any expert medical opinions, diagnoses, or conclusions is sensible.   By that same token, Dr. Summers is an indispensable *fact witness* regarding the issue of whether plaintiff was certified to be suffering from a "serious health condition" under 29 U.S.C. §§ 2611(11) and 2612(a)(1)(D) in conjunction with her leave request.   *See also* 29 C.F.R. 825.114(a). Conceptually speaking, it is well-nigh impossible to prohibit Dr. Summers from stating his opinion that plaintiff suffered from a "serious health condition," and yet simultaneously permit him to testify that he submitted a medical certification that, *in his opinion*, plaintiff suffered from a "serious health condition" at the time of her leave request.

The solution, it seems, is to allow Dr. Summers to testify that he issued the certification, to discuss the contents of the certification, to relay plaintiff's symptoms at the time of the certification, and to inform the jury of his treatment of plaintiff,

without offering an expert medical opinion that her condition was "serious" in the sense used by the FMLA.  After all, Department of Labor regulations indicate that the question of whether an employee is suffering from a "serious health condition" is not dependent upon the nature of the affliction, but rather upon *the nature and duration of the treatment* prescribed or required.  *See* 29 C.F.R. § 825.114(a).  *See also*, *e.g.*, *Hemenway v. Albion Public Schools*, No. 4:05-CV-7, 2006 WL 3313849, at *5 (W.D. Mich. Nov. 15, 2006).  Hence, this aspect of defendant's motion is GRANTED except to the extent outlined above.

> **5.   Any and all statements contained in Dr. Summers's March 16, 2007, declaration . . . which references, describes, or speaks to any of the challenged evidence outlined in this motion.**

Plaintiff has responded to this aspect of defendant's motion by stating that she "does not anticipate referencing the declaration during the trial in this action and / or offering it into evidence unless evidence solicited by the Defendant renders the declaration relevant."[12]  In light of this representation, the court believes that it is sensible to reserve ruling on this portion of the motion.  In the event that plaintiff desires to introduce this declaration at trial, *she is directed to first request a side-bar conference*.  Unless and until the court specially grants permission to reference the declaration, the parties shall refrain from doing so.  *See*, *e.g.*, *Thompson v. Equifax*

---

[12] Doc. no. 55, at 2 n.1.

*Credit Information Services, Inc.*, No. 00-D-1468-S, 2002 WL 34367325, at \*1 (M.D. Ala. Mar. 6, 2002) ("Courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal quotations, citation, and alteration omitted).

### III.  DEFENDANT'S MOTION *IN LIMINE* REGARDING PLAINTIFF'S ALLEGED EMOTIONAL DISTRESS

Defendant also notes that the FMLA does not provide for recovery of non-pecuniary losses, such as emotional pain, suffering, mental anguish, loss of enjoyment of life and work, and humiliation.  *See, e.g.*, *Harley v. Health Center of Coconut Creek, Inc.*, 518 F. Supp. 2d 1364, 1370-71 (S.D. Fla. 2007) (citing 29 U.S.C. § 2617(a)).  Plaintiff's counsel does not dispute this legal point, and states that she has no present intent to introduce any such evidence, or to seek damages for non-pecuniary losses, but opposes the motion insofar as it could preclude her from addressing plaintiff's emotional status as a factor contributing to the "serious health condition" that led plaintiff to seek leave.

The court agrees, at least tentatively, that evidence of plaintiff's emotional condition at the time of the contested absence from work could be relevant to demonstrate that she suffered from a "serious health condition."  Therefore, to the limited extent that defendant's motion seeks advance preclusion of evidence related

to plaintiff's emotional condition *at the time she sought protected leave*, it is DENIED, but the parties are directed to approach the bench to obtain express permission prior to introducing any such evidence. *See*, *e.g.*, *Stewart v. Hooters of America*, *Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752838, at *1 (M.D. Fla. June 18, 2007) ("A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds."). *See also Mee Industries v. Dow Chemical Co.*, No. 6:05-CV-1520-Orl-31DAB, 2008 WL 874836, at *1 (M.D. Fla. Mar. 27, 2008) ("Denial of a motion *in limine* does not insure that the evidence contemplated by the motion will be admitted at trial.  Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context.  A district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling, even if nothing unexpected happens at trial.") (internal citations omitted).

On the other hand, there being no dispute that plaintiff cannot legally recover damages for non-pecuniary losses, evidence, testimony, or argument related to emotional trauma suffered *as a result* of defendant's alleged interference with plaintiff's FMLA rights is not relevant or admissible.  *See* Fed. R. Evid. 401. Accordingly, to the extent defendant's motion seeks preclusion of evidence on this issue, it is GRANTED.

## IV.  CONCLUSION

In sum, plaintiff's motion *in limine* is GRANTED to the extent outlined above, and defendant's motions *in limine* are GRANTED in part and DENIED in part.  The court also notes that the deadlines set forth in the pretrial order for motions *in limine*, objections to deposition designations and witness and exhibit lists, requested jury instructions, *voir dire* questions, and other pretrial evidentiary filings, have expired. Accordingly, no further pretrial motions, objections, or other filings will be permitted absent extraordinary good cause being shown.

DONE and ORDERED this 28th day of April, 2008.

_____
United States District Judge